MERCHANTS' NATIONAL BANK OF FORT WORTH v. PHILLIP & WIGGS MACHINERY CO.

Delivered January 16, 1897.

**1.  Banks and Banking—Trust Fund—Receipt in Individual Names of Officers.**

A sum of money was deposited with a bank for the purpose of indemnifying it for furnishing sureties on a bond.  The president and cashier of the bank became the sureties, and the money was deposited to their credit and checked out by them. Held, that the execution of a receipt for the deposit in the individual names of the president and cashier did not constitute a contract between them and the depositor relieving the bank from responsibility.

**2.  Pleading—Non Est Factum—Receipt.**

Where a receipt specially pleaded as a defense was but a part of an entire transaction, evidence in contradiction of its alleged effect was admissible without a sworn plea.

**3.  Banks and Banking—Trust Fund—Misapplication.**

Where money deposited in a bank was known by the bank to be held by the depositors in trust, the bank, in accepting such deposit in payment of a debt due it by the depositors, participated in the misapplication, and became liable therefor.

APPEAL from Tarrant.    Tried below before Hon. S. P. GREEN.

*Humphreys & McLean,* for appellant.—1.   The receipt dated July 25, 1890, signed by E. W. Taylor and A. B. Smith, acknowledging the receipt by them from the Phillip & Wiggs Machinery Co. of the $3,400, and promising to return the same to that company upon termination of their liability as sureties, when accepted by that company, became a written contract between said parties, though only signed by Taylor and Smith.    Martin v. Roberts, 57 Texas, 564; Campbell v. McFadden, 71 Texas, 31.

2.   This contract having been pleaded by appellant as a defense, its execution, validity, and effect could only be denied or put in issue by a sworn plea, and no evidence tending to raise such issues could be legally admitted over our objections, or considered, unless based on a sworn plea.   Sayles' Civ. Stat., art. 1265, subdiv. 8; Sessums v. Henry, 38 Texas, 41; Waterworks v. White, 61 Texas, 536; May v. Pollard, 28 Texas, 677; Stapleton v. King, 33 Iowa, 28, 11 Am. Rep., 109; 19 Am. & Eng. Ency. Law, pp. 1123, 1124.

*John W. Wray,* for appellee.

STEPHENS, ASSOCIATE JUSTICE.—This appeal is from a judgment against appellant bank in favor of appellee machinery company for the sum of $3400, besides interest and costs.

According to the contention of appellee, this sum had been deposited with appellant in July, 1890, for the purpose of affording indemnity to it in procuring sureties for appellee on a replevy bond in a suit pending in the courts of Texas, appellee being a private nonresident corporation, doing business at Birmingham, Alabama. The contention of appellant, however, was that the money had been deposited with A. B. Smith and E. W. Taylor, who signed the bond as sureties, and at most that appellant was but the agent of appellee in so placing the money and procuring secureties on the bond.

Taylor and Smith were the president and cashier, respectively, of appellant bank. Smith, according to the testimony of Taylor, managed the business of the bank by the absolute acquiescence of every director in the bank. He had an absolute control of everything in it. Mr. Smith made all the negotiations of every kind and nature, loaned all the money that was loaned in the bank, and it was all ratified by the directors. Never was a dissenting voice to anything he did. Everything he did was acquiesced in." He further testified: "The purpose of Smith and myself going on the bond was to get the money in the bank and do those people a favor, but the main thing was to get the money in the bank."

First of all, James Wiggs, the president and general manager of the machinery company, came to Fort Worth and negotiated with appellant, through its cashier, A. B. Smith, to furnish the desired sureties, upon deposit being made with the bank in the sum of $3400, as indemnity against loss by reason of furnishing said sureties. He thereupon telegraphed to his company at Birmingham, Alabama, to have its bank there forward said sum to appellant, which was accordingly done in a certified check signed by Paul Phillip, secretary and treasurer, of appellee, payable to its order, drawn on the Jefferson County Savings Bank of Birmingham, and upon which was the following endorsement: "Transferred to the Merchants National Bank of Fort Worth, Texas, to be held by them as indemnity against any loss they may sustain on a bond of like amount furnished by them for us in a suit at law with the Texas & Pacific Coal Co. Phillip & Wiggs Machinery Co., by Paul Phillip, Secretary and Treasurer."

On receipt of this check, A. B. Smith sent the following telegram to the Jefferson County Savings Bank: "Our understanding with Mr. Wiggs was that he was to put $3400 cash in our hands to secure us on the bond. Will you pay this check on presentation? If not, will withdraw from bond at once. A. B. Smith, cashier."

On the same day, July 25, 1890, the following letter was mailed to the Cashier of the Jefferson County Savings Bank:

"John T. Englin, Cashier, Birmingham, Ala.

"Dear Sir:—Yours of the 23d received, inclosing certified check of Phillip & Wiggs Machinery Co. for 3400, to indemnify Mr. E. W. Taylor and myself on bond signed for the benefit of said company in same amount. This is all right, but the amount should be deposited with us in cash, for making the bond. I wired you to-day that, unless the amount was paid according to contract, in money, we would withdraw from the bond.                    A. B. Smith, Cashier."

On that day appellant gave Smith and Taylor credit on its books for the sum of $3400, and made out a deposit slip showing such credit, containing the following entry: "To be held by them as indemnity against any loss they may sustain on a bond of like amount furnished by them for Phillip & Wiggs Machinery Co. in a suit at law with the Texas & Pacific Coal Co."

· Contemporaneously the check was indorsed by the bank and forwarded, through its correspondents at other places, to the bank at Birmingham, accompanied by the following receipt:

"July 25, 1890.

"Received of Phillip & Wiggs Machinery Co. thirty-four hundred dollars, to be held by us as an indemnity against any loss that we may sustain on bond for like amount furnished by us for them in suit at law with the Texas & Pacific Coal Co. When said suit is determined, and we are released from said bond, the amount is to be returned to the Phillip & Wiggs Machinery Co. by us.                    A. B. Smith,
"E. W. Taylor."

The check was paid by the Birmingham bank July 31, 1890. The money which had thus been deposited July 25, 1890, was all checked out by Taylor and Smith between August 5, 1890, and February 9, 1891. According to the testimony of Taylor, "this money went to pay an indorsement of Taylor and Smith due the bank; the bank got the money." The sureties were finally, in the year 1895, released from the bond, but in the meantime had both become insolvent, and Smith had been killed.

As the judgment appealed from rests upon a statement of facts, without verdict or conclusions of fact, we adopt that construction of the evidence which supports the judgment, and hence conclude, as the above statements and quotations indicate, that in the first instance the bank undertook to furnish sureties for appellee, in order to get the benefit in its business of the proposed deposit; that the names of Taylor and Smith were but the instruments used by the bank in the performance of this undertaking; and that the deposit made in the name of Taylor and Smith was principally, if not entirely, appropriated by the bank, with knowledge of its trust character, to the payment of a debt due it from them.

In support of the first and second assignments of error, appellant

submits the following proposition: "The execution of the receipt for the money by Taylor and Smith, and the acceptance of same by appellee, constituted a contract between the parties making and accepting said instrument, and extinguished any liability imposed on appellant by virtue of the certified check sent to it by appellee."

The proposition in support of the third assignment is, that appellant acted merely as the agent of appellee in the transaction.

These propositions are reiterated under other assignments, to which is added the following: "This contract [referring to the receipt] having been pleaded by appellant as a defense, its execution, validity, and effect could only be denied or put in issue by a sworn plea. And no evidence tending to raise such issues could be legally admitted over our objections, or considered, unless based on a sworn plea."

We are unable to sustain any of these propositions, and can take no view of the case which would justify us in reversing the judgment. In all the negotiations with appellee, Smith seems to have acted in his official capacity, and the mere fact that the receipt was executed in the individual names of the president and cashier of the bank ought not, we think, to relieve it of the responsibility of a transaction which was in part for its benefit, rather than the individual benefit of Taylor and Smith.

The receipt, though specially pleaded by appellant, and its execution not denied by appellee, was but a part of the more comprehensive transaction. Besides, if regarded as executed by Smith and Taylor, in their individual capacity, to the exclusion of the bank from the transaction, then it was not a party to it, and could found no defense upon it as its contract. The statue invoked would therefore be inapplicable.

But treating the transaction as embodied entirely within the terms of the receipt, and viewing the deposit as the individual deposit of Smith and Taylor; we must still hold the bank liable, upon the ground of its participation in the misapplication of a trust fund. The rule upon this subject is thus stated in Morse on Banks and Banking, volume 1, section 317: "A bank must honor the checks of its depositor drawn in proper form, without regard to the use the depositor is going to make of the fund. The only limitation is that the bank must not itself participate in the profits of the fraud. If a bank participates in the misapplication of trust money, it is liable; as where money deposited by A. in his own name and known by the bank to belong to another, was applied by A. to pay his debt to the bank, it was held liable to the principal." Citing Commercial Bank v. Jones, 18 Texas, 811, which seems fully to sustain the text. The same principle is laid down in other portions of this section, and other authorities are cited in the notes in support thereof.

It is true, the pleadings do not seem to have been drawn with this aspect of the case in view, but it was charged that a deposit was a trust fund, which fact the deposit slip itself brought conspicuously to the

notice of the bank, and a misapplication or an appropriation to its own use of this fund was also charged.

It follows that the judgment should be affirmed.

*Affirmed.*

HUNTER, Associate Justice, disqualified and not sitting.

Writ of error refused.